U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 MAR -6 PM 1:20

CLERK

BY ⎯⎯⎯⎯⎯⎯
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

LORRI P.,

    Plaintiff,

v.

ANDREW SAUL,
Acting Commissioner of
Social Security,

    Defendant.

Case No. 2:18-cv-00038

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR AN ORDER
REVERSING THE COMMISSIONER'S DECISION AND
DENYING THE COMMISSIONER'S MOTION TO AFFIRM**
(Docs. 9 & 10)

Plaintiff Lorri Portland Page is a claimant for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("SSA"). She brings this action pursuant to 42 U.S.C. § 405(g) to reverse the decision of the Social Security Commissioner (the "Commissioner") that she is not disabled.[1] (Doc. 9.) The Commissioner moves to affirm. (Doc. 10.)

After her application was initially denied by the Social Security Administration, Administrative Law Judge ("ALJ") Paul Martin found Plaintiff ineligible for benefits based on his conclusion that Plaintiff can perform jobs that exist in significant numbers in

---

[1] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or mental impairment or impairments" must be "of such severity" that the claimant is not only unable to do any previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

the national economy and was therefore not disabled at any time after her alleged onset date of January 21, 2012.

Plaintiff identifies the following errors in the disability determination: (1) the ALJ applied the incorrect legal standard in evaluating Plaintiff's fibromyalgia; (2) the ALJ erred in assigning little weight to the opinions of Plaintiff's treating physician; (3) the ALJ's Residual Functional Capacity ("RFC") assessment was not based on substantial evidence; and (4) the ALJ's finding that Plaintiff was not fully credible was not based on substantial evidence.

Plaintiff is represented by Judith Brownlow, Esq. The Commissioner is represented by Special Assistant United States Attorney Kathryn S. Pollack.

## I. Procedural History.

Plaintiff filed her application for DIB on February 1, 2013, and her application for SSI on March 15, 2012 and February 28, 2013.[2] In her DIB application, she listed her impairments as consisting of an "autoimmune illness[,]" chronic pain, chronic fatigue, arthritis, asthma, Hepatitis C, and hypertension. (AR 61-62.) In both applications, Plaintiff alleged an onset date of January 21, 2012. The Social Security Administration denied both requests initially and on reconsideration. Plaintiff timely requested a hearing before an ALJ, which was held on November 19, 2014. Plaintiff appeared in person with her attorney and testified. A vocational expert also testified at the hearing. ALJ Thomas Merrill issued an unfavorable decision on January 29, 2015.

On April 21, 2016, Plaintiff appealed ALJ Merrill's decision to this court. The Commissioner filed a motion for entry of judgment under Sentence Four of 42 U.S.C. § 405(g). The court granted the motion and remanded the case to the Commissioner on December 20, 2016.

On March 28, 2016, Plaintiff filed a new application for SSI alleging an onset date of January 21, 2012. On October 12, 2016, the Social Security Administration

---

[2] Plaintiff previously applied for DIB and SSI on September 30, 2008. Her application was denied at the hearing level on January 20, 2012. On January 30, 2013, the Appeals Council denied her request for review.

adjudicated her disabled as of March 2016 and provided her with SSI back payments from April 2016 through October 2016. The Social Security Administration informed Plaintiff that it would review her case in approximately three years to determine if she remained eligible for SSI.

The Appeals Council issued an order of remand related to ALJ Merrill's January 29, 2015 adverse decision on May 4, 2017, noting that the only severe impairment found by the ALJ was chronic liver disease. The Appeals Council vacated ALJ Merrill's decision for the following reasons:

> The hearing decision does not contain an adequate evaluation of [certain] opinions[.] . . . The ALJ does not properly evaluate Dr. [Luther] Emerson's consultative examination (Ex. B4F). The ALJ references the doctor's findings and makes a general reference to the opinions of State agency physicians . . . . But the ALJ never discusses this opinion or assigns it weight. The [ALJ] rejected Nurse [Amelia] S[]hillingford's opinion because she was not an acceptable medical source[.] . . . The ALJ, however, did not acknowledge that Dr. [Gary] Clay signed the form as well. Dr. Clay was an acceptable medical source, so the ALJ's rationale is deficient in this regard. Further consideration of these opinions is necessary.
>
> The ALJ does not consider all of the claimant's alleged impairments[.] . . . Specifically, the ALJ does not address fibromyalgia, chronic regional pain syndrome, or trochanteric bursitis. The decision contains only a reference to 'other diagnoses that appear in the record[.]' . . . Upon remand, the ALJ is to consider all of the claimant[']s alleged impairments.

(AR 861.) The Appeals Council directed the ALJ to:

> Give further consideration to the treating and nontreating source opinion pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence. As appropriate, the [ALJ] may request the treating and nontreating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments (20 CFR 404.1512 and 416.912). The [ALJ] may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources.
>
> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p).

3

> If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-12, 83-14 and 85-15).

(AR 862.)

The Appeals Council deferred to the ALJ on remand to reopen and revise the Social Security Administration's October 12, 2016 determination "if additional development indicates that the conditions for reopening are met[.]" *Id.* "Unless the determination is reopened and revised in accordance with applicable regulations, the period before the [ALJ] will be limited to that period prior to March 28, 2016." *Id.*

Plaintiff timely requested a new hearing, which was scheduled for October 18, 2017 before ALJ Martin. Plaintiff attended the hearing, at which she was represented by counsel and testified. ALJ Martin reopened the Social Security Administration's October 12, 2016 SSI determination because "new and material evidence was furnished" (AR 756) and issued an unfavorable decision finding Plaintiff was not disabled between January 21, 2012 and December 19, 2017, the date of his decision. ALJ Martin's decision stands as the Commissioner's final decision.

## II. ALJ Martin's December 19, 2017 Decision.

In order to receive disability benefits under the SSA, a claimant must be disabled on or before the claimant's date last insured. A five-step, sequential-evaluation framework determines whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at [S]teps [O]ne through [F]our of the sequential five-step framework established in the SSA regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citation and internal quotation marks omitted). At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (alterations in original) (citation and internal quotation marks omitted).

On December 19, 2017, ALJ Martin denied Plaintiff's application for benefits, finding she was not disabled. In so ruling, he determined that she had not engaged in substantial gainful activity since January 21, 2012. At Step Two, he found that Plaintiff suffered from the following severe impairments: asthma, plantar fasciitis, trochanteric bursitis, fibromyalgia, Hepatitis C, depression, and anxiety.

At Step Three, ALJ Martin concluded that none of Plaintiff's impairments, either independently or collectively, met or exceeded the severity of one of the listed impairments. He considered the listings for asthma, joint involvement, musculoskeletal systems, and chronic liver disease to reach this conclusion. For Plaintiff's asthma, he found her claim did not meet the listing because she does not have chronic asthmatic bronchitis or asthma attacks and received treatment and interventions approximately six times per year. For her plantar fasciitis and trochanteric bursitis, he found that "there is no evidence in the record that she is unable to ambulate effectively" (AR 759), noting that Plaintiff inconsistently used an assistive device and her gait abnormalities did not rise to the level of an inability to ambulate. He further found that her treatment for Hepatitis C was successful. He determined Plaintiff had several mild cognitive impairments such as remembering information or interacting with others and was moderately impaired in her ability to concentrate, persist, or maintain pace.

At Step Four, ALJ Martin determined that Plaintiff had the RFC to:

[P]erform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently. She can stand and walk for 4 hours and sit for 6 hours in an 8 hour workday. She has no limits in pushing and

5

> pulling. She can frequently stoop and never balance. She can perform the
> remaining postural activities on an occasional basis. She has no
> manipulative, visual, or environmental limitations. The claimant can
> maintain concentration, persistence, and pace for 1-4 step instructions for 2
> hour blocks over an 8 hour workday and 40 hour workweek. She can
> manage routine changes and safety concerns. She has no limitation in
> social interaction.

(AR 760-61.)

ALJ Martin determined that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms but that her testimony at the hearing regarding the intensity, persistence, and limiting effects of those symptoms was "not entirely consistent" with "the medical evidence and other evidence in the record[.]" (AR 761.) He stated that he "fully considered" the opinion statements from treating physicians and examining providers but gave them little weight because they "are not well supported by or consistent with the medical evidence of record." (AR 762.) He cited medical records from treating Nurse Practitioner Amelia Shillingford ("NP Shillingford"), treating physician Irene Krechetoff, D.O., rheumatologist Todd Dombrowski, M.D., consultative examiner Luther Emerson, M.D., and consultative examiner Alan Lilly, M.D., in noting that Plaintiff was generally mobile during examinations, that she was cured of Hepatitis C, and that she received minimal ongoing treatment for her asthma.

Although the ALJ considered NP Shillingford's RFC Questionnaires completed in 2012 and 2014, he gave them "little weight" because he found them to be "not well supported by the treatment notes or clinical examinations and, moreover, are internally inconsistent, which cuts against the persuasive value." (AR 765.) He also found Dr. Emerson's April 25, 2013 opinion to be internally inconsistent and gave the opinions of treating physicians Dr. Krechetoff and Gary Clay, M.D., little weight due to the lack of specificity in their evaluations.

With respect to state agency consultants, ALJ Martin gave the September 2, 2016 opinion of Donald Swartz, M.D., great weight because it was consistent with the treatment notes in the record and because Dr. Swartz was familiar with the Social Security program rules. He gave the 2013 opinions of Francis Cook, M.D., and Leslie

Abramson, M.D., moderate weight because they were generally consistent with Dr. Swartz's opinion, although they reviewed fewer treatment notes. He gave the mental health opinions of state agency psychological consultants Roy Shapiro, Ph.D., and Ellen Atkins, Ph.D., great weight because they were consistent with the medical evidence of record and because these consultants were familiar with the program rules and evidentiary requirements.

At Step Five, ALJ Martin concluded that Plaintiff was unable to perform any past relevant work as a nurse practitioner. Considering her age, education, work experience, RFC, and the testimony of the vocational expert, he found that Plaintiff could perform jobs existing in significant numbers in the national economy such as "retail marker[,]" "mail sorter[,]" and "order caller[.]" (AR 770.) For this reason, he found that Plaintiff was not disabled from January 21, 2012 to December 19, 2017, the date of his decision.

## III. Conclusions of Law and Analysis.

### A. Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (citation and internal quotation marks omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

It is the Commissioner who resolves evidentiary conflicts and determines credibility issues, and the court "should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *see also Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (noting "genuine conflicts in the medical evidence are for the Secretary to resolve"). Even if the court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C.

7

§ 405(g); *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). Remand is warranted "when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him." *Lopez v. Sec'y of Dep't of Health & Human Servs.*, 728 F.2d 148, 150-51 (2d Cir. 1984).

## B. Whether the ALJ Failed to Apply the Correct Legal Standard to the Opinion Evidence.

Plaintiff contends that the ALJ failed to properly weigh the opinions of NP Shillingford, Dr. Clay, Dr. Emerson, Dr. Lilly, and Dr. Swartz. With respect to Dr. Clay, Plaintiff argues that the Commissioner did not provide good reasons for rejecting: (1) a 2014 RFC Questionnaire authored by NP Shillingford and co-signed by Dr. Clay; and (2) an October 29, 2017[3] opinion letter from Dr. Clay regarding Plaintiff's fibromyalgia.

The parties do not dispute that Dr. Clay is one of Plaintiff's treating physicians. As such, Dr. Clay's opinions are entitled to "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "[I]f the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). In so doing, the ALJ must "explicitly consider" the following non-exclusive regulatory factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95-96 (alteration in original) (citation omitted); *accord* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "An ALJ's failure to 'explicitly' apply [these] factors . . . is a procedural error." *Estrella*, 925 F.3d at 96 (citation omitted). However, "a slavish recitation of each and every factor . . . is unnecessary where the ALJ's reasoning and adherence to the regulation are clear[.]"

---

[3] The parties incorrectly state in their briefs this letter was written on August 12, 2016. The record citation provided by both Plaintiff and the Commissioner is to the October 29, 2017 letter.

8

*Rivera v. Comm'r of Soc. Sec.*, 394 F. Supp. 3d 486, 494 (S.D.N.Y. 2019) (alterations and internal quotation marks omitted) (quoting *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order)). If the ALJ fails to sufficiently address these factors, the court must determine whether the decision "otherwise provides 'good reasons'" for the weight given to a treating physician's non-controlling opinion. *Estrella*, 925 F.3d at 96.

On October 29, 2017, Dr. Clay wrote a letter in support of Plaintiff's claim which states in full:

> Lorri Page (12/10/1962) was a patient in Rockingham Medical Group on 10/23/2017. Lorri has been followed in my office since 2011, the providers she has seen in the past have left. I have reviewed her past records which have included a specific physical disability exam by Dr[.] Emerson and 2 visits with my colleague Amelia Shillingford where physical residual functional capacity question[n]aires were completed. These reports consistently describe Ms[.] Page as being below sedentary work capacity (she could not stand or walk for even two hours in an eight-hour workday, and she could sit for at least four hours in an eight-hour workday and this was caused by her extreme fatigue, requiring her to lie down frequently). In addition she has seen specialists in the past. The most significant specialty report [i]n term[s] of the disability issue would be the Rheumatologist evaluation. He talks about her chronic pain, non restorative sleep and difficulty functioning that is typical of fibromyalgia and chronic fatigue.
>
> Based on my conversation with Ms[.] Page, it seems clear that she has [f]ibromyalgia, as described by the rheumatologist. As you know this can be a chronic [disabling] condition and fits well with the findings reported on the 3 past evaluations that were done in the years under question. As would be e[x]pected her symptoms haven't changed significantly since her first visit to my office in 2011. This is a long[-]term problem that has no good solution.
>
> I do not know what information caused the past medical reports to be disregarded. As a Family Practice Physician who has had no long[-]term contact with Ms[.] Page there is nothing new that I can present, but I would suggest that a formal functional capacity evaluation done at Cheshire or Dartmouth could put to rest outstanding controversy over what she is capable of. If that supports the opinion of the past providers then knowledge of fibromyalgia would let me say with confidence that her present disability extended back to 2011.

(AR 1091.)

The ALJ determined that this opinion should not be given controlling weight because Dr. Clay did not provide any formal functional assessment of the claimant's abilities and limitations and did not resolve or discuss inconsistencies in Dr. Emerson's April 25, 2013 opinion or between NP Shillingford's 2012 and 2014 RFC Questionnaires. He found Dr. Clay's statement that "certain symptoms are consistent with the claimant's diagnoses . . . [contained] little in the way of analysis or assessment of the claimant's abilities and limitations." (AR 766.) In addition to Dr. Clay's lack of long-term contact with Plaintiff, the ALJ noted that Dr. Clay acknowledged "there was nothing new he could present," and "suggested she attend[] a formal functional capacity evaluation[.]" *Id.*

The ALJ failed to provide good reasons for not giving Dr. Clay's October 29, 2017 opinion controlling weight. After reviewing NP Shillingford's and Dr. Emerson's RFC recommendations, Dr. Clay determined Plaintiff had chronic fibromyalgia and assessed her as "being below sedentary work capacity[.]" (AR 1091). He described Dr. Dombrowski's findings, acknowledging that a rheumatologist's opinion would be the "most significant" determinant of Plaintiff's disability, and noted that Dr. Dombrowski's description of Plaintiff's symptoms are "typical" of fibromyalgia and chronic fatigue. *Id.* He opined that her condition was disabling and had not changed since she first visited his office. He recommended further evaluation.

In finding Dr. Clay's opinion insufficient to trigger the treating physician rule, the ALJ did not consider that Plaintiff had been followed in Dr. Clay's office since 2011; that Dr. Clay examined Plaintiff on multiple occasions prior to writing the letter; or that Dr. Clay's opinions encompassed NP Shillingford's RFC Reports, which contained additional details. *See Estrella*, 925 F.3d at 96 (finding an ALJ erred in applying the treating physician rule where "[n]owhere in the ALJ's decision . . . is the fact that Dr. Dron treated Estrella from 2004 to 2006, and again from 2010 to 2013"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (noting treating physician opinions are given more weight because they "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual

10

examinations"). In finding that Dr. Clay's opinion was inconsistent with other evidence in the record, *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), the ALJ also relied exclusively on the opinions of non-examining physicians, one of whom, Dr. Swartz, did not review all of the relevant medical records including Dr. Clay's October 29, 2017 opinion. *See Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987) ("A corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis.").

A "searching review of the record" does not permit the court to conclude that the "substance of the treating physician rule was not traversed[.]" *Estrella*, 925 F.3d at 96 (citation and internal quotation marks omitted). Dr. Clay's opinion is consistent with NP Shillingford's and Dr. Emerson's RFC determinations that Plaintiff could not stand for longer than two hours or sit for more than four hours in a workday without experiencing extreme fatigue. Although Plaintiff often had a normal gait, coordination, sensation, and ability to rise from a chair and get on and off an examination table, she also consistently reported to providers and the consultative examiners that she experienced "significant fatigue" (AR 434; *see also* AR 418, 432, 602, 1047, 1089), and was in chronic pain. Dr. Emerson, Dr. Dombrowski, and Dr. Lilly all found upon examination that Plaintiff had multiple myalgias. (*See* AR 602 (Dr. Emerson) ("She had marked myalgias in her legs, both in the calves and in the thighs"); 1049 (Dr. Dombrowski) (noting Plaintiff had "tender spots" in various musculatures); 1088 (Dr. Lilly) ("Upper extremities reveal that she does have areas of point tenderness involving the anterior aspect of both arms and both shoulders and some areas on her back[.] . . . Lower extremities are equal and symmetrical, again with painful areas over the anterior aspects of both thighs which she states feels like they have been bruised.").

As the ALJ did not provide good reasons for failing to accord Dr. Clay's opinion controlling weight, a remand is warranted. *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will

11

continue remanding when we encounter opinions from ALJ[]s that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."); *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998) ("[B]ecause . . . the ALJ . . . failed to follow SSA regulations requiring a statement of valid reasons for not crediting the opinion of plaintiff's treating physician, . . . a remand is necessary in order to allow the ALJ to reweigh the evidence.").

An ALJ's redetermination of whether to accord Dr. Clay's opinion controlling weight is likely, in turn, to affect the weight accorded to NP Shillingford's RFC Reports, Dr. Emerson's April 25, 2013 opinion, Dr. Lilly's August 12, 2016 opinion, and Dr. Swartz's September 2, 2016 opinion; Plaintiff's testimony and function reports; as well as the ALJ's evaluation of Plaintiff's RFC. *See Aung Winn v. Colvin*, 541 F. App'x 67, 70 (2d Cir. 2013) (remanding when the ALJ did not provide good reasons for rejecting treating physician opinions and ordering "the ALJ to consider further and explain how the medical evidence supports the RFC determination, gathering such additional evidence and testimony as may be necessary"); *Hanley on behalf of Leger v. Berryhill*, 2018 WL 1602849, at *12 (D. Vt. Mar. 29, 2018) (holding on remand under the treating physician rule that "the ALJ must consider the impact" of the opinion on the plaintiff's RFC) (citation omitted).

## CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiff's motion for an order reversing the Commissioner's decision (Doc. 9), DENIES the Commissioner's motion to affirm, (Doc. 10), and REMANDS for further proceedings consistent with this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 6th day of March, 2020.

Christina Reiss, District Judge
United States District Court